Justice, this is Michael Green for the Petitioner. It seems to me that the issues are pretty well set out in the moving papers, and the central issue of trial, of course, is whether the defendant was under the influence of an extreme mental or emotional disturbance. And of course I see the issue being, number one, whether or not the ineffective assistance of counsel claim was preserved in the court proceedings. Could you address that, please? Yes, I will. I mean, we have set out a progeny of cases, and I think the seminal case was Peterson v. Lampert. And it seems to me, and that's a Ninth Circuit case, and it seems to me what that case stands for is for the purposes of exhaustion, a citation to a state case analyzed by a congressional official saves the same purpose. Well, the difference is if the standards for ineffective assistance are the same under state and federal law, then that citation will suffice. But it appears that the standards under Hawaii law may be a little different than the standards under federal law. Well, you know, I can only respond to the court based on what we believe the cases say. What do you think the standards for ineffective assistance of counsel are in Hawaii? Well, I think it's a balance test as to whether or not the court could say in one hand whether or not this was a trial tactic as opposed to whether or not they weighed the balance between whether or not if the prejudice to the defendant in raising certain issues is outweighed by the benefit. What Hawaii case was cited by the petitioner that you say encompasses the same standard as the federal standard? Well, I will tell you that we said, I didn't write the brief, of course, but I will tell you that we have a table of authorities that deal with a number of cases, and I believe that they, I can go through this. What's the best case? What case in there do you think typifies the similarity between the state standards for ineffective assistance and the federal standards? I think the one that's cited is, among others, is Brioni's versus the state. And you think that's the case that most closely typifies the fact that the Hawaii standard for ineffective assistance is the same as the federal standard? Well, I think it's a similar. We have State versus Smith. What's the best one? Which one best sets forth that premise? It's hard for me to say that. And to answer you, I'm just going to guess. I'll give you my best guess, and I gave you Brioni's. All right. I think that's about right. Well, you're stuck with your guess. And I got it. I got it, and I appreciate that. If the issue is whether or not it's exhaustion and whether it's been waived, then, of course, we're stuck with whether or not this Court believes that by citing cases to the State Supreme Court, the Hawaii State Supreme Court, that deal with federal issues, whether or not a decision on those cases is tantamount to deciding the federal cases. Right. That's the issue. Absolutely. Because the federal issue was not raised. You would agree with that? Yes. Yes, I do. So, I mean, if that's what it is, then, you know, argument in this case, I mean, I could have prepared a lot less than I did last night. Because what it really boils down to is the Court taking a look at those cases and really making the legal determination as to what the words say. If we agree with you that the issue was raised, then tell us how there was ineffective assistance. Well, you know, I've been doing this longer than I care to say. And when you look back at trial attorneys and try to judge them and what they did or what they didn't do, you could have mailed this verdict in. When you have a case, frankly, as outrageous as the facts of this case, and you have a defendant or you have some of his friends simply say that he was acting under a certain emotional disturbance or extreme mental disturbance, and he gets up there and explains how life was with his wife, and other people come in and say how it was, and then the other side brings in people and they say, you know what, she was a wonderful lady. All I could do is look back at what happened at the first trial. I mean, this jury's hung. And it's hung, I believe, because they had the ability to ferret out between what the expert, Dr. Acklin, had to say. You know what the problem is, at least from one-third of this Court, as I look at it? The case was tried, as you say, and there was a hung jury. Nobody can question that fact. But when you go back to come again, the state goes back to come again, too. And the state will, as I think anybody reasonable will try to correct whatever the problem was. And so let's assume that you're right. There's a question, at least, of effective assistance because he didn't call an expert. But when he gives his reason for not calling the expert, then don't we have to examine that reason? Yeah, but, you know, frankly speaking, I don't buy into that. Oh, no, I think you do. I'm asking you one, two, three. No, no, you're right. When we get to that three, we have to look at that. You do. However, I don't know how many cases this Court has heard over the years, or cases I've tried, where there's always a battle of experts. Well, I've been hearing them for 34-plus years. Well, I'm getting close. But, you know, there's always a battle of experts. Whether it's civil, whether it's criminal, you call your guys, they call their guys. But, you know, it's interesting, invariably, when the day is done and you speak to some of the jurors and they say, you know what? I believe that person. I really believe in the credibility and the rightness of that expert. And I thought the expert actually understood what they were doing, as opposed to someone else. But at least get the chance. Get the chance. And, you know, when you read, when you come in following the first trial, and you know the result of the trial, and you obviously read the trial and see what Dr. Acklin had to say, it changes the ballgame. But the state didn't have an expert in the first trial. Oh, no, they did not. But, I mean, you know, frankly speaking, you know, I don't see facts like this all the time. I'm originally from Chicago. I mean, I've seen some pretty bad things happen when I defended in that town. This stuff is pretty bad. We don't have this kind of stuff in Hawaii very often. And just to hear what happened here makes you look crazy. There's a Strickland case that says if it's a tactical decision, it's virtually unassailable. How do we get past that line? Well, you know, I think there needs to then be a hearing. I mean, if it's a question where someone says it's tactics. For example, the second issue we raised about inconsistent theories, we put it in the brief. But you know what, frankly, I'm not buying into that. Because I think the trial lawyer had probably an obligation to do that. We put it in basically because it was there and it was an issue to be for consideration. Frankly, I didn't consider it very much when I looked at what our papers were. But when you look at a tactical decision, there has to be a reason for this. And as I said, when you go in with these facts and you understand what Aplin had to say and the reasons for it, without that, forget it. In order to win this case, there'd have to be at least one juror that killed his wife. And that's it. That's the difference in approaches between lawyers. That's your view of the best way to defend this case. Perhaps his view was that if I bring in an expert, the state's going to bring in an expert and it's going to be a wash. But if we do lay opinion testimony, I may have more people who can paint the victim as a demon than they may have more people who can paint the victim as a saint. And so that's a legitimate tactical decision to make. Let me just tell you why I respectfully disagree with the court. It's okay for your neighbors and friends to come in and say whatever they want to say. It's different when you have a psychiatrist, a medical expert that at least gives you the parameters of what stressors can cause certain effects in a human being. I mean, what drives people to react and do certain things? If you don't have that before the jury, there's at least an inference, and I think it's reasonable for jurors to go back and start saying, you know what? If these facts constituted this kind of an emotional or mental affect, how come we didn't hear from somebody? I mean, there's all kinds of doctors that are available to tell us. So one doctor says yes, one doctor says no, but at least give the defendant the opportunity to be defended properly. Counsel, before you conclude, I wanted to go back to the exhaustion issue. I mean, you cited me to Brionis, which you said is worth the standard. That's your best guess. That's my best guess. And Brionis, the court said, we have declined, however, to adopt the federal standard for reviewing trial counsel's performance. And so why doesn't that defeat your exhaustion argument? The only thing I can rely on in the exhaustion argument is, as I said, the Peterson case that discusses this. I mean, I think to narrowly construe it in that way and to say Hawaii is an aberration or it's different than everything else, I think once it's I'm not saying Hawaii is an aberration. I'm just saying that in Peterson, we look to the state court definition of ineffective assistance to say that if you raise it in state court, it's corollary to a federal claim, but we have to look at how the state defines ineffective assistance. That's why I asked you that question. I understand. I understand. I'm not saying that Hawaii is an anomaly, but just how the court has defined ineffective assistance and whether or not it's incorporated the federal standard. I frankly believe in the cases and the line of cases that we have cited, there is enough, I think, to believe that the denial by the Hawaii Supreme Court in fact denied the federal remedies as well. All right. We'll give you a minute for rebuttal. Thank you. I don't know that I'll need it, but I thank you for your question. All right. Thank you. Good morning. Good morning. Tom Pudo for the state of Hawaii. Would the outcome of this trial have been different? But for the error, let's assume we find it an error. Would the outcome of the trial have been different? Of course not, Your Honor. This is one of the few cases where the court can look at the record, and I'm assuming— Counsel, you have to stay at the— Excuse me, and I'm assuming with confidence that the court is relatively aware of the record. There was overwhelming evidence of the horrific and cruelly calculated nature of this murder. The reason I ask you that question is because he's going to have a minute to rebut, and I wanted him to know that even if he got to his first point, he'd have to show the second, which we didn't discuss when he was up here, so— But, Counsel, how can you say that? I'm sorry. Go ahead. How can you say that if there was a mistrial in the first trial? Because there's absolutely no correlation between the mistrial in the first instance and what happened in the second instance. Furthermore, under Strickland, that's not the analysis. Under Strickland, you look at what happened in a particular— I was just talking about your argument that there is absolutely no way that the outcome would have been different if there had been experts. I'm going to try and put this tactfully. In the first trial, Your Honor, notwithstanding what was previously said in this argument, the State did call an expert. So you did have the proverbial battle of the experts. However, one expert, as opposed to another expert, is an issue. But point in fact, and I think more dealing to a logical explanation for possibly the first trial result, the Court was incorrectly—the Court incorrectly instructed the jury. The jury had no idea of the particular significance with respect to extreme emotional disturbance— excuse me—of the aspect of control. Now, significantly, in the second trial, the jury was properly instructed. Under Strickland, it says that we're to presume that these jurors follow the law. When that law, with respect to the Hawaii law, is applied to these facts— Strickland doesn't talk about juries following the law. Strickland talks about reasonable tactical decisions on the part of attorneys, doesn't it? Well, again, in all deference to the Court, I'll just quote from Strickland. What page? Pages 694 to 695. A court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to a law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, nullification, and the like. The jury is— Presumed to act in accordance with the law. And in the second trial, they were properly instructed with respect to law. But not only—and not to jump around and assume the basics, but not only should this matter not be before the Court because of the overwhelming nature of the facts which make any contention that counsel somehow could have done something different rather specious. I believe on the first issue, there is absolutely no doubt that the whole standard and the federal standard are completely different. Moreover, counsel, in their brief on page 40, and I quote, Unlike the Hawaii test, the Strickland test then requires a second step of showing actual prejudice within a reasonable probability of a different result, but for counsel's errors. They recognize that the Hawaii test and the Strickland test are different. As the lower court noted, they just ignored it and chose instead of following the normal state procedure which would bring another Rule 40, they just went to the federal. That was error. That error is what prevents this case from being before the Court now. Clearly, then with respect to Peterson v. Lambert, that's a situation where they're dealing with counsel. This was that proverbial case. It was counsel. So counsel are deemed to mean what they say. They are lawyers. They are jurists. They are professionals. It's unlike the case they cited Sanders, in which case it was a pro se defendant. The Washington construct was the same for any fact. It was the same as the federal. Therefore, they said not citing one is the same as citing the other. Lambert was Oregon. It's not the same. It's like what? It is not the same. So you cannot just say that, well, the first prong is the same. The Court wouldn't have had to reach the second prong, so therefore, it was raised. That's not alerting the Court to the fact that you're raising a federal issue. As that impacts on the procedural aspect of this case, we move then to the certificate of appealability. Not filed in this case. A notice of appeal is not a certificate of appealability. There is a quantum standard that has to be set forth in a certificate of appealability for it to get accepted, for it to be before this Court. But didn't we in my circuit issue a certificate of appealability? If my memory serves me correct, the answer is yes. Individuals Lavis and Hawkins, I'm not sure their names. Okay. So then that issue has already been resolved in terms of the certificate of appealability was granted. Actually, respectfully, no, Your Honor. A recent case by this Court, Umbach, and I sent it up to you, and I believe the last name was Phelps, the name of the Court. But I sent it up to this Court in a 28-J letter. It says that the merit panel can review the issuance of a certificate of appealability. It is not unreviewable. You're asking us to say that the certificate of appealability was improvidently granted by the motions panel? What I'm asking this Court to do is recognize that all along the way, this defendant had no defense. Just because there is a crime does not necessarily imply that there is a defense. This was defensive. What does that have to do with the certificate of appealability? Because not only should this case not be here because of the procedural aspect of failure to exhaust, the failure to show that there was a procedural default that should be excused, the improper and improvident granting of certificate of appealability. Bottom line, there just is no merit to the contention. Could you stay at the microphone so the tape can pick up your voice? There just is no contention to the assertion that trial counsel was ineffective. Trial counsel was aware of what happened in the first trial. Trial counsel said on the record she did not want to be bound by what happened in the first trial. She would not be bound. She did not want the trial to just turn on a battle of the experts. She successfully prevented in the motion of limine of the State being able to have a doctor even look at the defendant. Why? Because she wasn't calling an expert. She wanted to present to the trial, to the fact finders, 12 people, the portrait of a hapless individual stuck in a listless, lifeless marriage, and then suddenly, somehow, he was just beat down, beat down. And one night there was an accident. However, the evidence clearly showed four months prior to the murder, he had planned, plotted, gone to different entities, investigated the currents and depth charts of the ocean to know where to dump the body. Then on the day, the night he murdered her, goes home to see on the weather report whether or not this is the day, decides that it is, and then kills her. After the fact and at trial, he admits that he probably instigated the fight with her. He also admitted during the trial that he had the boat that he used to dispose of the body and the other instrumentalities to cover the crime set in place and ready to execute his plan. To say then under a local defense that would mitigate the crime that he lost control, when? Where? A psychologist that came in there that would come into that trial and posit that would just be incredulous. I'm not saying in the abstract there's not a set of circumstances which could support that. But these facts don't. And that's what the second defense counsel knew she was facing, a situation where to bring in a psychologist would be incredulous, especially when the jury is correctly instructed on the law and the emphasis is put on the aspect of control. For EMED to fly in this jurisdiction, you must show that there was a loss of self-control. There's completely no evidence in this of a loss of self-control. Months before he planned and plotted, then he carried it out. Where is the loss of self-control? A psychologist planning would have been successful but for something that he didn't foresee. What he didn't foresee was tying the surfboard, tying the weights that would drag the body to the depths of the ocean to the latch handle on a surfboard back that then ripped off. Now as the body is starting to float away, well currents in the ocean, I don't know how many of you sail but being what they are, the two bodies separate. So he's flailing away in his boat trying to get back to the body to put in the bag but no, he can't do that. The engine stalls. So at this point we have the proverbial dumb criminal. Criminal only dumb in the sense that that's the aspect of his plan he didn't plot out. So those facts, those type of facts are what the second defense trial, excuse me, second defense counsel is facing, a dumb criminal. So she has to make something consistent. He was hapless. He was stupid. Even to the extent when he was choking this woman, when he touched her, he said, oh no, she's still gurgling. So I tape her mouth, then try and get the reckless contract in there. And as the district court noted, he seamlessly weaved this into there. So what she did as required into Strickland was subject the state's proof to the adversarial testing. There is no question here, which should be the issue before this court, whether or not this defendant got a fair trial. He got a fair trial. He had a zealous advocate working against a mountain of evidence that his defense counsel said, you could have mailed this verdict in. That being the case, again, I go back to what? This case for the orderly administration of justice should not be here. And these failures on the part all along should not excuse it, because there's nothing compelling about the facts here to think. We have an innocent man sitting in jail. You have a ruthless, cold-blooded murderer in jail where he belongs. Nothing good. Thank you, counsel. Is there any rebuttal? We'll give you one minute for rebuttal. You know, one thing the lawyer said, and I respect his argument, is this defendant had no defense. He had no defense. He wasn't provided a defense. I mean, unless this jury gets something more than this defendant and his friends, it's over. And when we look at the government saying, you know what, this was a mountain of evidence, well, fair people decided there was an issue the first time, and it's only based on one thing, in my view. I appreciate your advocacy, but the one question that I think we are going to have to look at was this. Counsel was asked, why didn't you call an expert? For the reasons you suggest, that question could be raised. He gave an answer. Here's why I didn't call an expert. Don't we have to look to see how reasonable that is? I think, number one, there should be a hearing on that issue. But, you know, as lawyers. . . What in this record requires a hearing, though? Well, I mean, just to find out what reasonableness is. I mean, what this lawyer was thinking. I mean, how can you. . . it really boggles my mind, and no disrespect to the trial counsel. How can you say I didn't want to call an expert to put in any possible mental defense because they're going to call somebody? You know what, that's all he's got in this case. That is, all he has in this case is to have a doctor who is well-trained, well-skilled to say. . . And well-paid. Well. . . Respectfully, if the three of us were someplace else other than here, we could have a good talk about experts and fees. Because I have a bunch of my colleagues sitting in here that write larger checks than I do for experts. But, you know, as they used to say where I came from, it means that way sometimes. It would be a hard case for an expert to make, I think. But we don't have to decide that. No, I agree. I agree. It's a brutal case, but Dr. Acklin is well-respected. All we have to decide is whether it was a tactic. Isn't that all we have to decide is whether it was a reasonable tactic? Yes. I think tactic you don't have to decide because we admit they say that. Reasonableness, frankly, I think it is. And I just can't imagine based on these facts to say that they don't get medical testimony. But it was a joy to be in front of you, and I wish you well. Thank you, counsel. Thank you to both counsel for a well-argued case. This case is submitted for decision by the court. The next case on calendar for argument is Daly v. Harris. Thank you.
judges: Silverman, W. Fletcher, Rawlinson